# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | MISC. NO. 07-0023 |
| VERSUS | * | JUDGE MELANCON |
| WALTER  BONIN | * | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION  REGARDING COMPETENCY

The undersigned Magistrate Judge issued an Order that Walter Bonin be examined by Dr. James H. Blackburn pursuant to Title 18 U.S.C. § 4246 for the purpose of updating his previous report on the defendant and to attempt to determine if the defendant is "presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to the property of another" and to determine "whether there has been any change in the defendant's condition between the date of Judge Methvin's ruling finding the defendant incompetent ... and the present, such that Mr. Bonin might now have become competent to assist in counsel in his defense." [rec. doc. 5]. Dr. Blackburn's October 10, 2006 Psychiatric Evaluation has been received by the court and filed under seal. [rec. doc. 9].

A competency hearing before  the undersigned Magistrate Judge was held on February 15, 2007.  Lester J. Gauthier, Jr. appeared on behalf of the defendant, Walter Bonin; Assistant United States Attorney Camille Domingue appeared on behalf of the United States.  Dr. James H. Blackburn testified as the court's witness.  The following were entered as court's exhibit number one through four: (1) Psychiatric Evaluation of Dr. James H. Blackburn received on

June 3, 2005; (2) Sanity Commission Evaluation dated October 21, 2002 (authored by Dr. James H. Blackburn); (3) Louisiana Department of Health and Hospitals Psychological Consultation dated June 24, 2003 by David Greenway, Ph.D.; and (4)  Psychiatric Evaluation of Dr. James H. Blackburn dated October 10, 2006.

At the conclusion of the competency hearing, the matter was taken under advisement. This Report and Recommendation follows.

## Background

In 2004, Bonin was arrested in this district on a complaint filed in the Middle District of Tennessee.  *See USA v. Bonin*, 6:04-mj-6017 (W.D.La. 2004).   The complaint charged Bonin with (1) transmitting in interstate commerce a communication containing a threat to injure the person of another; and (2) transmitting in interstate commerce a communication containing a threat to injure the property of another, with intent to extort money or thing of value, in violation of 18 U.S.C. §§875(c) and 875(d).[1]  The affidavit attached to the criminal complaint alleged that Bonin had been sending harassing and threatening e-mails to country music singer George Strait for years.

Bonin appeared before Magistrate Judge Methvin on February 4, 2004 for an initial appearance and removal hearings. [*Id.* at rec. doc. 2]. Through court-appointed counsel, he waived an identity hearing, and requested that the preliminary examination be held in the charging district.  Bonin's parents testified that Bonin had long suffered from mental problems,

---

[1] The complaint was superceded by a seven-count indictment returned on February 11, 2004, in the Middle District of Tennessee.

and received psychiatric treatment on an outpatient basis.  Bonin was released to the third-party custody of his parents and was placed on an unsecured bond with conditions of release. Defense counsel orally requested a competency hearing, and a formal motion to determine mental competency was filed on February 13, 2004, supported by copies of Bonin's psychiatric and medical records. [*Id.* at rec. doc. 9].  On February 17, 2004, counsel supplemented the motion with additional records received from the Walter O. Moss Regional Medical Center in Lake Charles, Louisiana.  [*Id.* at rec. doc. 10].  The records show that Bonin has a long history of mental disease[2] and that a state sanity commission had found him mentally incompetent in October, 2002.[3]

---

[2]Bonin was hospitalized at the UMC Psychiatric Unit in March , 1995 after Bonin locked himself in his room and threatened suicide.  The records show that while in the hospital, Bonin was very guarded, demonstrated delusions of grandeur involving George Strait and the acquisition of property with "a million dollars", and was discharged against medical advice with a diagnosis including adjustment disorder with mixed disturbance of emotions and conduct, and personality disorder, not otherwise specified

Bonin was treated at the W.O. Moss Psychiatric Center in Lake Charles for thirteen days in December, 1996, after threatening to blow himself up with a butane bottle because his parents refused to take him to George Strait's home.  His diagnosis at discharge included paranoid schizophrenia and schizotypal traits. The discharge report notes that Bonin improved on medication, but the doctor observed that Bonin's condition was not "substantially changed" and that "the patient's delusional structure is chronic and will not be substantially affected by medications or hospitalization."

A June 24, 2003 Psychological Consultation performed by Dr. David Greenway at the Tyler Mental Health Center performed after being incarcerated for "stalking" a young woman indicates that Bonin's testing was "consistent with paranoid schizophrenia as a primary diagnosis."  Dr. Greenway reported that Bonin had "prominent psychotic symptoms" involving delusions of grandeur involving various women and George Strait.  The diagnosis included schizophrenia, paranoid (with grandiose features), borderline intellectual functioning, paranoid, dependent and narcissistic traits, and poor reality testing.  In sum, Dr. Greenway reported that Bonin's case "represents chronic psychopathology ... [and that] Bonin will likely be in intermittent contact with the mental health system for the rest of his life."

[3]That report, authored by Dr. James H. Blackburn, was entered at the hearing as court exhibit 2. This report concluded that Bonin was delusional and incompetent to stand trial:

"He clearly has severe impairment of his judgment and perception of reality . . . He is . . unable to effectively cooperate with his attorney in his defense because of his ongoing delusional system.  Apparently, he has been on the antipsychotic Risperdal for at least three months.  It has perhaps helped stabilize him to

3

A competency hearing was held before Magistrate Judge Methvin on February 20, 2004, pursuant to 18 U.S.C. §4241(a). The hearing was held by telephone because both parties stated they did not intend to present testimony or evidence. Counsel agreed that the medical records previously submitted by defense counsel conclusively established that Bonin was suffering from paranoid schizophrenia and delusions, and was mentally incompetent to stand trial. Magistrate Judge Methvin agreed, and entered a formal finding of mental incompetence. [*Id.* at rec. doc. 12].

On March 1, 2004, as required by 18 U.S.C. § 4241(d)(1), Magistrate Judge Methvin issued an order requiring that Bonin be hospitalized for a period up to four months to determine whether he could attain capacity to proceed. [*Id.* at rec. doc. 13]. Bonin self-surrendered to the Federal Medical Center in Springfield, Missouri, on April 26, 2004, and was released in August, 2004. [*Id.* at rec. docs. 14 and 15]. The hospital issued a "Certificate of Mental Competency" on September 1, 2004.[4] [*Id.* at rec. doc. 17].

---

some extent but clearly has not affected his delusions. His delusional system appears to have a series of fixed delusions that are unlikely to change, even with medication and treatment. He is clearly unable to participate in his own defense at this time."

[4]The certificate of competency was accompanied by a forensic report signed by Dr. Richard I. Frederick, clinical psychologist. The report delineates the severe nature and extent of Bonin's mental impairments, describing his thinking as "irrational" and "delusional," and expressing the opinion that while Bonin at times had a factual understanding of his situation, his delusions led him into "faulty reasoning."

While Dr. Frederick deemed the previous diagnosis of schizophrenia "tenuous," he conceded that Bonin demonstrated various schizophrenic symptoms, including a persistent delusional state and paranoid ideas:

Mr. Bonin is an individual with a longstanding marginal adjustment in life. He is essentially incapable of independent functioning in the community. He has been previously diagnosed with schizophrenia, but I think that is a tenuous diagnosis at best. He has some of the "negative symptoms" of schizophrenia, which include some isolativeness and discomfort with closeness in personal relationship [sic], but he does not seem to have much of a history of hallucinations. The prominent "positive symptom" of schizophrenia is a persistent delusional preoccupation with grandiose ideas, believing he has the capacity and talent for writing publishable songs and scripts,

4

A second evidentiary hearing was held before Magistrate Judge Methvin on October 13, 2004, pursuant to §4241(e).  Neither party challenged the Certificate of Competency, and no additional evidence was offered.  [*Id.* at rec. doc. 19].  However, in her twenty-nine page Final Determination of Mental Incompetency, Magistrate Judge Methvin rejected the Certificate of Competency and concluded that Bonin remained mentally incompetent to stand trial.  [*Id.* at rec. doc. 23].  That Ruling was based on an extensive review of Bonin's medical records and the testimony of Bonin's family at the initial appearance, as well as Judge Methvin's finding that the certificate of restored competence was both conclusory and unsupported by specific factual findings.  She additionally found the certificate unpersuasive and inadmissible because

and paranoid ideas, believing others have taken advantage of him by stealing his work.

Dr. Frederick concluded that Bonin has a delusional disorder, and a "significant thinking disorder."  He noted, however, that on an increased dosage of medication, "Bonin's quality of thought improved substantially, and he was able to discuss his circumstances more gainfully."  Solely on the basis of this finding, Dr. Frederick concluded that Bonin had attained capacity:

Mr. Bonin manifests a delusional disorder.  Not only does this mean that he has specific fixed false beliefs, but it also means that he is disposed to misinterpreting events and demonstrating faulty reasoning about his circumstances.
. . .
When I persuaded Mr. Bonin to cooperate in the evaluation without trying to influence its outcome, it was clear that he had a significant thinking disorder.  Not only did he appear to have delusional beliefs about some of the events in question, he did not appear to have a good capacity to engage in sustained rational discourse about his circumstances. . . As his mental disorder was more effectively treated by an increase in medication, this quality of thought improved substantially, and he was able to discuss his circumstances more gainfully.

With the improvement in his mental state, at this time it is my opinion that Mr. Bonin is able to appreciate the nature and potential consequences of the proceedings against him.  He displays a rational and factual understanding of the charges against him.  He seems capable of properly assisting his attorney in this matter.  Given these considerations, it is my opinion he is competent to proceed.

it failed to meet the minimal standards of reliability under *Daubert v. Merrel Dow Pharmaceuticals, Inc*., 509 U.S. 579, 113 S.Ct. 2786 (1993).

Judge Methvin concluded that further treatment or hospitalization of Bonin was inappropriate because there was no evidence to support the conclusion that Bonin's serious psychiatric problems could be ameliorated to the extent that he would become competent to stand trial in the foreseeable future.  Accordingly, she found that  § 4241(d)(2)(A) was inapplicable. Thus, to determine the only remaining question, whether Bonin posed a "substantial risk of bodily injury to another person or serious damage to property of another" within the meaning of 18 U.S.C. §4246(a), Judge Methvin required Bonin to undergo a local evaluation on this issue by a jointly-approved psychiatrist, who would take into consideration Bonin's then current medications, treatment, and living conditions.  [*Id*.].  Bonin did not appeal Judge Methvin's ruling.[5]

On June 3, 2005, the court received the Psychiatric Evaluation of Dr. James H. Blackburn.  Dr. Blackburn again found that "[r]epeated psychiatric and psychological evaluations of Mr. Bonin have documented the seriousness of his mental disorder."  He further found that Bonin's "mental state and delusional system" is a "difficult and complex process that would require resources and structure that are not in place at the present time."  Moreover, Dr. Blackburn found that Bonin's "recent clinical evaluation does not indicate that the

---

[5]The government appealed Magistrate Judge Methvin's determination of incompetency to a District Judge. However, Bonin was transferred to the Middle District of Tennessee before a ruling on the Government's appeal could be issued by this court. [*Id*. at rec. doc. 25 and 26].

medication is significantly alleviating symptoms of his mental illness." Additionally, the doctor

found that Bonin's delusional disorder continues, and that despite limitations on his ability to

pursue his delusions, including no computer access, no transportation and the fact that he is

living with parents, these limitations "have not prevented him from posing a risk in the past

and are unlikely [sic] be effectively preventative in the future."  Thus, with respect to Bonin's

potential for dangerousness, Dr. Blackburn concluded that "with a reasonable degree of

certainty that given the opportunity, Mr. Bonin will pursue activities in one or more of his

delusional areas.  If he perceives that a particular individual is blocking or interfering with his

'potential to be successful' in his pursuits, that individual may be exposed to harm from Mr.

Bonin."  Accordingly, Dr. Blackburn unequivocally found that "Mr. Bonin is dangerous ...."

Despite these findings, after being transferred to Tennessee, on May 3, 2006, that court

released Bonin subject to the same conditions of supervised release previously set by Judge

Methvin of this court.  On September 20, 2006, a probation officer with this court reported that

on September 19, 2006 Bonin had made threats toward Magistrate Judge Methvin.  In a letter

to Governor Blanco, Bonin had suggested that Methvin and other government officials were

conspiring against him.  Bonin therefore stated that he was "gonna go out and buy some plastic

tie straps or handcuffs and make a citizens arrest" He also faxed a statement to a United States

Marshall informing that he had in fact bought some plastic tie straps to make his citizen's

arrest and further that on Friday of that week he would begin to make his arrests. [*See USA v.

Bonin*, 6:06-mj-6636 (W.D.La. 2006) at rec. doc. 1].

Based on these threats, a pretrial services officer for the Middle District of Tennessee filed a Petition for Action on Conditions of Pretrial Release, and petitioned the court for an arrest warrant to bring Bonin before the court for a bond revocation proceeding. A warrant for Bonin's arrest was issued on September 20, 2006. [*Id.*].

After his arrest in this district, Bonin appeared before the undersigned Magistrate Judge on September 21, 2006 for an initial appearance. [*Id.* at rec. doc. 2]. A detention hearing and preliminary examination were set for September 28, 2006. Bonin was held in custody pursuant to an order of temporary detention.

Bonin appeared with court appointed counsel before the undersigned for a detention hearing, preliminary examination and identity hearing on September 28, 2006. After reviewing the entire court file on Bonin under docket number 6:04-mj-6017, including the reports and rulings issued in that case, based on that review and the undersigned's personal observations of Bonin in court on two occasions, the undersigned agreed with Judge Methvin's December 9, 2004 ruling in which she found that Bonin was incompetent. [*Id.* at rec. docs. 4 and 5].

Accordingly, the undersigned ordered that Bonin be examined by Dr. James Blackburn for the purpose of updating his previous report on Bonin, and to attempt to determine if Bonin is "presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to the property of another" and to determine "whether there has been any change in the defendant's condition between the date of Judge Methvin's ruling finding the defendant incompetent ... and the

8

present, such that Mr. Bonin might now have become competent to assist in counsel in his defense." [*Id.* at rec. doc. 5].

In his October 10, 2006 Psychiatric Evaluation, Dr. Blackburn notes that Bonin continues to have "delusional beliefs" and an "ongoing delusional system" wherein he remains preoccupied with George Strait and cloning, and also remains convinced that the government is involved in a conspiracy to "control every aspect of his life" and "do whatever it has to make him disappear."  Moreover, Bonin's belief that the government wants him dead is causing Bonin to fear for his life.  Dr. Blackburn additionally notes that Bonin is convinced that he does not need psychiatric medication, and that with individual counseling, "all of this can be worked out."  Dr. Blackburn concludes that Bonin's condition, which has affected him for many years, has "not changed significantly with psychiatric treatment, medication, inpatient psychiatric care, incarceration, or outpatient psychiatric treatment." Rather, "recent clinical evaluations and available information indicate that there has in fact been a deterioration in Mr. Bonin's mental health ..." as  "attempts to monitor Mr. Bonin's mental state, his delusional system, and his potential to continue acting on those delusional beliefs does not provide a significant deterrent or preventive potential."  In sum, "Bonin's dilutions [sic] have continued unabated."

Moreover, Dr. Blackburn states that compliance with medication is not an issue because Bonin adamantly refuses to take it, and even if this were not the case, "medication is having

essentially no effect on his delusions and is unlikely to effectively decrease them at any time in the future."

Additionally, Dr. Blackburn opines that Bonin's situation is deteriorating and that he is becoming more desperate and frustrated while his threats are increasing in seriousness. Considering Bonin's "demonstrated ability to obtain specific information about the individuals toward whom he has anger and resentment", Dr. Blackburn opined that "Bonin's ability to implement some of his plans and threats, and act on his delusions should not be underestimated."

In sum, Dr. Blackburn concludes that "there was no indication ... that Bonin has become competent enough to assist counsel in his defense."  Moreover, "Bonin has the potential to be dangerous", and "has limited coping skills and minimal ability to control his impulses." Finally, both available history and clinical evaluation indicate that under the impact of strong emotion, Bonin's perceptions may become grossly distorted and his controls overwhelmed, and that this process is already occurring and has been increasing in intensity for several months. Thus, Dr. Blackburn opines that Bonin's "release at this time, or in the foreseeable future, may substantially create the risk of bodily injury to another person or serious damage to the property of another." [*Id.* at rec. doc. 9].

Upon receipt of Dr. Blackburn's report, defense counsel advised that because there is an issue as to Mr. Bonin's competence, counsel could not stipulate to the admissibility of Dr.

Blackburn's Psychiatric Evaluation. [*Id.* at rec. doc. 10].  Accordingly, an evidentiary hearing

was set for February 15, 2007.  [*Id.* at rec. doc. 11].

Defense counsel also informed the court and the government that he had been in touch

with the coroner of this Parish in an effort to locate a suitable state facility to house the

defendant.  However, no suitable state facility was then available.  Counsel for the defendant

further informed the court and the government that he and the coroner were continuing to try to

locate a suitable state facility in which to house Bonin. Accordingly, defense counsel was

instructed to immediately inform the court if a suitable state facility became available. [rec.

doc. 16].  Per Report of Counsel dated March 7, 2007, defense counsel advised that no

suitable state facility has been located.  [rec. doc. 17].  Accordingly, despite counsel's efforts,

no suitable arrangements for state custody are currently available.

At the hearing, Dr. Blackburn, the court's expert witness in the field of psychiatry,

testified that the conclusions he reached in his October 10, 2006 report remained unchanged,

and that he continues to believe, as he has throughout the years that he has evaluated Bonin,

that Bonin is in fact, incompetent.  More specifically, Dr. Blackburn affirmed his conclusion

that Bonin's release at this time, or in the foreseeable future, may substantially create the risk

of bodily injury to another person or serious damage to the property of another.

The basis for this conclusion is that Bonin suffers from an ongoing series of delusions

that are not representative of reality and which he continues to defend.  Moreover, Bonin now

perceives many other persons and entities as posing an obstacle to the accomplishment of his

goals, which has resulted in Bonin becoming progressively more frustrated.  As this group of

perceived threatening individuals has expanded, the level of Bonin's threats against those he

feels are persecuting him have escalated significantly and increased in both width and depth to

encompass all of those who he believes are keeping him from completing his vision.

Moreover, Bonin now considers himself at risk of being killed by these people, and more

specifically, the government.  This is significant, Dr. Blackburn explained,  because this

perceived threat to his life increases and escalates dramatically Bonin's potential for acting out

physically to protect himself from this perceived harm.

　　　　Additionally, Dr. Blackburn noted that Bonin's perception of threats has increased over

time.  A significant aspect of this escalation is that Bonin's father, who at one time acted as an

inhibitor of Bonin's actions, has passed away.  Accordingly, Bonin has no inhibitors remaining

against his acting on his delusions and beliefs.

　　　　With respect to prognosis, Dr. Blackburn testified that Bonin has not responded to any

previous psychiatric treatment or medication and that he has no reason to believe that he will

respond to any treatment rendered in the future.  He has the same delusions and beliefs he

presented with in 1996, although now targeting different people and entities. There are no

current  state of the art psychiatric treatments that will make any significant difference in

Bonin's condition.   Accordingly, absent the development of different treatment or medication

in the future, Dr. Blackburn's impression was that prognostically Bonin will remain essentially

the same for the rest of his life.  Dr. Blackburn noted that his prediction is not isolated, but

rather, with only one exception (the opinion issued by the physician at the Federal Medical

Center in Springfield, Missouri which opinion was not accepted by Judge Methvin), that same

prediction is shared by the psychiatrists and psychologists who have evaluated Bonin over the

past twelve to fifteen year period.

## **Law and Analysis**

**Competency to Stand Trial**

Due Process prohibits the conviction of an accused who lacks mental competence to

stand trial; a criminal defendant may not be tried unless he is competent. *Medina v. California*,

505 U.S. 437, 453, 112 S.Ct. 2572, 2581, 120 L.Ed.2d 353 (1992); *Drope v. Missouri*, 420 U.S.

162, 171-172, 95 S.Ct. 896, 903- 904, 43 L.Ed.2d 103 (1975); *Pate v. Robinson*, 383 U.S. 375,

378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815 (1966);  *Cooper v. Oklahoma,* 517 U.S. 348, 116 S.Ct.

1373, 1377, 134 L.Ed.2d 498 (1996); *James v. Singletary*, 957 F.2d 1562, 1569-1572 (11th

Cir.1992); *Bishop v. U. S.,* 350 U.S. 961, 76 S.Ct. 440 (1956); *Washington v. Johnson*, 90 F.3d

945, 949 (5th Cir. 1996) citing *Cooper*, 517 U.S. at 354, 116 S.Ct.at 1376.  An accused must

have both  "sufficient present ability to consult with his lawyer with a reasonable degree of

rational understanding," and "a rational as well as factual understanding of the proceedings

against him." *Washington*, 90 F.3d at 950 quoting  *Dusky v. United States*, 362 U.S. 402, 80

S.Ct. 788, 789, 4 L.Ed.2d 824 (1960) (*per curiam*).  As a corollary to this substantive right,

there must be procedures adequate to guard an accused's right not to stand trial or suffer

13

conviction while incompetent.  *Holmes v. King*, 709 F.2d 965, 967 (5th Cir. 1983) citing

*Drope,* 420 U.S. at 172, 95 S.Ct. at 904 and *Pate*, 383 U.S. at 385, 86 S.Ct. at 842.

**Statutory Framework**

_____The statutory framework does not provide clear guidance for the situation presented

herein.[6]  However, it is clear that a key goal of the statutory framework is to provide a procedure

which prevents the release of a defendant whose release would create a substantial risk of

danger to society as a result of a mental disease or defect of which the defendant presently

suffers.  *See United States v. S.A.*, 129 F.3d 995, 999 (8th Cir. 1997).  Accordingly, reliance on

the statutory framework is appropriate in this case.

Title 18 United States Code Section 4246 establishes procedures to follow with respect

to those defendants whose release would create a substantial risk of danger to society.  *United*

*States v. Wheeler*, 744 F.Supp. 633, 636 (E.D.Penn.1990).   The statute sets forth a "mechanism

intended to provide a safeguard to the general public and to ensure that mentally ill and

dangerous individuals receive proper treatment."  *S.A.*, 129 F.3d at 999.  Section 4246[7],

_____

[6]Courts have noted troubling gaps in the statutory scheme.  *See U.S. v. Shawar*, 865 F.2d 856, 863 (7th Cir. 1989) (leaving open the question as to whether the Attorney General can seek to have the non-dangerous defendant committed to state custody where the statutory language only mentions the dangerous incompetent)*; United States v. Wheeler*, 744 F.Supp. 633, 636 (E.D.Penn.1990) (finding under the "black hole of legislation" that when no § 4246(a)certificate is filed by the director while the defendant is still in the custody of the facility, the district court nevertheless has further statutory authority over the defendant under § 4246)

[7]  Title **18 U.S.C. §4246** is entitled "**Hospitalization of a person due for release but suffering from mental disease or defect**" and provides in pertinent part:

**(a) Institution of proceeding**. – If the director of a facility in which a person is hospitalized certifies that a person in the custody of the Bureau of Prisons whose sentence is about to expire, or who has been committed to the custody of the Attorney General pursuant to section 4241(d), or against whom all criminal charges have been dismissed solely for reasons related to the mental condition of the person, is presently suffering from a mental disease or defect as a result of which

however, read in conjunction with § 4241(d)[8], becomes applicable only when a currently hospitalized defendant reaches the end of his period of hospitalization imposed following hearing and determination of incompetency pursuant to § 4241(c) and (d) and the director of the facility in which the defendant is hospitalized certifies that the defendant remains incompetent. Under § 4246, a defendant due for release may remain subject to the custody of the Attorney General after certification and a hearing showing: (1) that the defendant is presently suffering

---

his release would create a substantial risk of bodily injury to another person or serious damage to property of another, and that suitable arrangements for State custody and care of the person are not available, he shall transmit the certificate to the clerk of court for the district in which the person is confined.  The clerk shall send a copy of the certificate to the person, and to the attorney for the Government, and, if the person was committed pursuant to section 4241(d), to the clerk of the court that ordered the commitment.  The court shall order a hearing to determine whether the person is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another.  A certificate filed under this subsection shall stay the release of the person pending completion of procedures contained in this section.

[8]Title 18 U.S.C. § 4241(d) provides as follows (emphasis supplied):

**(d)  Determination and disposition**.--If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility--

(1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the trial to proceed; and

(2) for an additional reasonable period of time until--

(A) his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the trial to proceed; or

(B) the pending charges against him are disposed of according to law; whichever is earlier.

**If, at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit the trial to proceed, the defendant is subject to the provisions of section 4246.**

from a mental disease or defect (incompetence); (2) that the defendant's release would create a substantial risk of bodily injury to another person or serious damage to property of another (dangerousness if released); and (3) that suitable arrangements for state custody and care of the person are not available (no suitable state placement).  *See* 18 U.S.C. § 4246(a) and (d)[9];  *See also United States v. Ecker*, 30 F.3d 966, 970 (8th Cir. 1994).

Section 4246 therefore provides for indefinite hospitalization of incompetent defendants whose release would pose a significant danger to the general public.  *S.A.*, 129 F.3d at 998. District courts are entrusted with "an awesome responsibility to the public to ensure that a clinical patient's release is safe." *Id.* at 999.  "Section 4246 is specifically designed to avert the public danger likely to ensue from the release of mentally ill and dangerous detainees."  *Id.* However, because of the substantial liberty interest at stake, it must be shown that the

---

[9]Title 18 U.S.C. § 4246(d) provides as follows:

**(d)  Determination and disposition**.--If, after the hearing, the court finds be clear and convincing evidence that the person is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to the property of another, the court shall commit the person to the custody of the Attorney General. The Attorney General shall release the person to the appropriate official of the State in which the person is domiciled or was tried if such State will assume responsibility for his custody, care and treatment.  The Attorney General shall make all reasonable efforts to cause such a State to assume such responsibility.  If, notwithstanding such efforts, neither such State will assume such responsibility, the Attorney General shall hospitalize the person for treatment in a suitable facility, until –

(1) such a State will assume such responsibility; or

(2) the person's mental condition is such that his release, or his conditional release under a prescribed regimen of medical, psychiatric, or psychological care or treatment would not create a substantial risk of bodily injury to another person or serious damage to property of another;

whichever is earlier.  The Attorney General shall continue periodically to exert all reasonable efforts to cause such a State to assume such responsibility for the person's custody, care, and treatment.

defendant's mental disease or defect will pose a "substantial risk" to society if released, and there must be "clear and convincing evidence" to support that conclusion; mental disease or defect and dangerousness must by shown by clear and convincing evidence. *United States v. Lewis*, 929 F.2d 440, 442 (8th Cir. 1991); *See also United States v. Baker*, 807 F.2d 1315, 1321 (6th Cir. 1986) (noting the substantial liberty interest at stake in commitment proceedings).

In this case, the director of the facility in which Bonin was hospitalized pursuant to § 4241(d) did not file the requisite certification to expressly trigger application of the scheme set forth in § 4246.  To the contrary, the director issued a certificate of competency pursuant to § 4241(e).  However, after conducting an evidentiary hearing pursuant to the dictates of that subsection, Judge Methvin of this court expressly rejected the director's certificate, instead finding that  Bonin remained incompetent, and more specifically, that Bonin continued to suffer from a mental disease or defect precluding trial on the pending Tennessee charges. Accordingly, Judge Methvin ordered additional evaluation of Bonin to determine if Bonin was not only incompetent but also dangerous, the second inquiry necessary for application of section 4246.  That evaluation, performed by Dr. Blackburn and received by this court on June 3, 2005, unequivocally found that "Mr. Bonin is dangerous ...."

In making her determination of incompetency, Judge Methvin noted that the statutory scheme does not set forth what procedures should be followed in the event the court disagrees with and expressly rejects a certificate of competency issued by the director of a facility pursuant to § 4241(e).  Moreover, the statutory scheme does not expressly set forth a procedure

17

to follow when an incompetent defendant, who lacks a "substantial probability" of attaining

competence through additional hospitalization, is no longer in the custody of a federal medical

facility, and hence no certificate addressing the defendant's dangerousness as contemplated by §

4246(a) may be filed by that facility.  Moreover, the Fifth Circuit Court of Appeals has not

addressed the issue.  However, at least one court has found that even in the absence of

certification by the director of a federal medical facility, a district court has further authority

over an incompetent defendant under § 4246.  *United States v. Wheeler*, 744 F.Supp. 633

(E.D.Penn.1990).

That court, the District Court for the Eastern District of Pennsylvania, concluded that in

the absence of certification, a district court has "an obligation to make a determination as to

whether [an incompetent] defendant's release is likely to create a substantial risk of danger to

society."  *Id*. at 639.  Thus, that court found that under the circumstances, "the most prudent and

expedient procedure" was to conduct a hearing for the purpose of making a judicial

determination as to the defendant's current mental condition, and if that condition had not

improved to permit the trial to proceed as set forth in § 4241(d), making a judicial

determination under § 4246(a) as to whether the defendant's release would create a substantial

risk of bodily injury to another person.  *Id.*  Moreover, to aid in that determination, that court,

like the undersigned, ordered further examination and evaluation of the defendant pursuant to

§ 4246(b).[10]  In the event the court found by clear and convincing evidence that the defendant

was in fact presently suffering from a mental disease or defect as a result of which his release

would create a substantial risk of bodily injury to another person or serious damage to property

of another, and that no suitable arrangements for state custody were available, the court

indicated that it would commit the defendant to the custody of the Attorney General pursuant to

§ 4246(d) for care and treatment in suitable facility.  *Id*. at 640.

The Pennsylvania Eastern District Court made this determination notwithstanding non-

binding precedent of the Sixth Circuit to the contrary.  In  *United States v. Baker*, 807 F.2d 1315

(6th Cir. 1986), the Sixth Circuit determined that the accused, a mentally ill man, had been held

in violation of his due process rights.  The court provided two reasons in support of its

conclusion: (1) Baker was not released after his four-month confinement under § 4241(d), even

though no determination had been made that he would likely have attained competency within a

reasonable time, *Id*. at 1320; and (2) Baker failed to receive constitutionally adequate notice that

a scheduled hearing was in fact a § 4246 civil commitment hearing seeking to commit him

indefinitely.  *Id*. at 1324.

Rather, the hearing at which the defendant was committed was set one day after the

government had filed a motion to dismiss the probation violator's warrant that had been issued

---

[10]Title 18 U.S.C. § 4246(b) provides as follows:

**(b) Psychiatric or psychological examination and report** .--Prior to the date of the hearing, the
court may order that a psychiatric or psychological examination of the defendant be conducted,
and that a psychiatric or psychological report be filed with the court, pursuant to the provisions of
section 4247(b) and (c).

against the defendant.  The following day, at the hearing on the government's Motion to Dismiss, the government argued that its motion to dismiss was filed primarily because it did not believe it could show that Baker would pose a danger to others were he released.  However, before ruling on the motion to dismiss, the court questioned one of the defendant's psychiatrists and elicited testimony that Baker would pose a danger to someone in the community and that the psychiatrist felt "uncomfortable" letting Baker out into the community.  *Id*. at 1318-1319. Following this testimony, the government withdrew its motion to dismiss, and the court ruled from the bench that Baker was committed to the custody of the Attorney General pursuant to § 4246.  *Id.* at 1319. Thus, the district court held a dangerousness hearing without proper notice and then at the conclusion of the hearing committed the defendant to an indefinite period of civil commitment pursuant to § 4246.

The defendant argued that he was not adequately notified that the government intended to commit him for an indefinite period of time since he never received notification that the hearing was going to be a § 4246 civil commitment hearing since the government had filed a motion to dismiss the charges and no certificate pursuant to § 4246(a) had been issued.  *Id*. at 1321.

In support of its second determination, the court noted the significant deprivation of liberty associated with civil commitment, and hence the necessity for procedural safeguards to ensure that due process requirements are met. *Id.*   In the court's view, § 4246(a) certification serves a "notification function under the Due Process Clause" by ensuring that the defendant is

notified that a commitment hearing will be held as well as the basis for that hearing.  *Id*. at 1323-1324.  Thus, the court reasoned that in the absence of certification by the director, the defendant had no meaningful opportunity to challenge the government's evidence, to rebut his potential for future dangerousness or to present witnesses on his own behalf.  *Id*. at 1323. Thus, "since a certificate was not filed with the court ... nor was the defendant notified that a section 4246 certificate was filed" the court found that the "defendant did not receive adequate notice of the claims which he had to defend against."  *Id*.  The court then went further stating that a "the district court, in essence, *sua sponte*, called a section 4246 hearing before the requisite findings were made by the director ..." and that a "section 4246 hearing cannot be conducted and a section 4246 commitment order cannot be issued until it has been certified to the court that the state will not accept the individual."  *Id*. at 1324.  Thus, the court held that the "district court lacked statutory authority to commit Baker and deprived Baker of his liberty without due process."

In the instant case, the due process infirmities cited by the *Baker* court did not occur. Bonin has never challenged his confinement at the Federal Medical Center in Springfield, Missouri imposed pursuant to § 4241(d)(1), nor does the record reflect that his confinement exceeded the statutory limitations.  Moreover, Bonin has received timely and more than adequate notice of this court's intention to hold a hearing pursuant to § 4246, as well as the issues to be determined at the hearing, and has been provided a meaningful opportunity at the

hearing to challenge the evidence against him, to present contradictory evidence and to present witnesses on his behalf.  [*See* rec. docs. 5-11].

Finally, in the absence of binding Fifth Circuit authority to the contrary, like the Pennsylvania Eastern District Court, the undersigned finds that the absence of certification by the director of the federal medical facility does not deprive a district court of statutory authority under § 4246 over an incompetent and dangerous defendant; to the contrary, district courts have an obligation to make a determination as to whether a defendant's release will endanger the community.  Although the *Baker* court suggested a different conclusion, that case is not binding precedent, and further, fails to address the unique circumstances presently before this court. Accordingly, the undersigned will not accept that court's conclusory determination. Significantly, the *Baker* court did not address the interplay between § 4241(d) and § 4246(a) under circumstances similar to those presented herein.  Examination of those statutes in light of the procedural history of this case, however,  provides further support for this court's finding. Section 4246(a) does not require a facility director to file a certificate.[11]  Further, § 4241(d) which provides for commitment in the first instance, makes no mention of the director making a determination of dangerousness or the availability of a suitable state facility.[12]  Yet, section 4241(d) expressly triggers application of § 4246, stating that at the end of the § 4241(d)

---

[11]Rather the director is given discretionary authority to do so only in the event he can make all of the required determinations.

[12]Instead the statute requires only a determination by the director as to "whether there is a substantial probability that in the foreseeable future he will attain capacity for the trial to proceed."

22

commitment period, "the defendant is subject to the provisions of § 4246" if "it is determined that the defendant's mental condition has not so improved as to permit the trial to proceed."

While the statute expressly triggers application of § 4246, in so doing, the statute does not limit or mandate that the required determination be made only by the facility director. Indeed, such a reading would, in effect, preclude the courts from making the final determination of competency to proceed to trial during an adversary hearing, a result which would be constitutionally impermissible.[13] Conversely, when read literally, § 4246(a) requires certification of the director before § 4246 proceedings may be instituted.  The statutes are thus plainly contradictory, § 4241(d) seemingly permitting application of § 4246 upon judicial determination, and § 4246 requiring action by the facility director.

Requiring action by a facility director, however, makes no sense in a case such as the present where the director's determination has been rejected, the court has found the defendant remains incompetent and the defendant is no longer in the custody of a federal medical facility. Requiring action by the director makes even less sense in this case where the defendant has been accorded all due process guarantees (adequate notice and a meaningful opportunity to be heard), and the defendant himself has certified that no suitable state facility is available to assume his custody and care.  Thus, given the contradictory nature of the legislation and this court's obligation "to avert the public danger likely to ensue from the release of mentally ill and

---

[13]In this case, that is exactly what transpired, the final determination of Bonin's competency to stand trial, and more specifically, the final determination that Bonin's mental condition had not so improved so as to permit the trial to proceed, was made judicially by Judge Methvin when she expressly rejected the director's certificate of competence, following adversary hearing after the defendant had been discharged from the federal facility.

dangerous detainees" (*S.A.*, 129 F.3d at 999), the undersigned cannot find that this court's actions are statutorily unauthorized.

## Analysis

### Bonin Presently Suffers from a Mental Disease or Defect

As set forth above, after his discharge from the federal medical center in Missouri, Magistrate Judge Methvin ruled that Bonin was mentally incompetent to stand trial. Bonin did not object to this ruling, and did not appeal this court's finding. Moreover, after his arrest in this district, after reviewing this court's entire file on Bonin under docket number 6:04-mj-6017, and based on the undersigned's personal observations of Bonin, the undersigned agreed with Judge Methvin's December 9, 2004 ruling in which she found that Bonin was incompetent. Again Bonin did not object to this court's finding.

In his October 10, 2006 Psychiatric Evaluation, Dr. Blackburn concludes that "there was no indication ... that Bonin has become competent enough to assist counsel in his defense." Bonin's condition, which has affected him for many years, has "not changed significantly with psychiatric treatment, medication, inpatient psychiatric care, incarceration, or outpatient psychiatric treatment." Rather, "recent clinical evaluations and available information indicate that there has in fact been a deterioration in Mr. Bonin's mental health ..." as  "attempts to monitor Mr. Bonin's mental state, his delusional system, and his potential to continue acting on those delusional beliefs does not provide a significant deterrent or preventive potential." "Bonin's dilutions [sic] have continued unabated."  In sum, Dr. Blackburn concludes that "there

was no indication ... that Bonin has become competent enough to assist counsel in his defense."

This conclusion was affirmed at the hearing February 15, 2007 hearing wherein Dr. Blackburn

testified that his conclusion remained unchanged, and that he continues to believe, as he has

throughout the years that he has evaluated Bonin, that Bonin is in fact, not competent to stand

trial or to assist counsel in his defense.  For the reasons set forth by Dr. Blackburn, the

undersigned finds that Bonin remains incompetent and is presently suffering from a mental

disease or defect.

**Bonin's Release Would Create a Substantial Risk of Bodily Injury to Another Person**

In his June 3, 2005 Psychiatric Evaluation, Dr. James H. Blackburn found, in pertinent

part, that despite limitations on Bonin's ability to pursue his delusions, including no computer

access, no transportation and the fact that he is living with parents, these limitations "have not

prevented him from posing a risk in the past and are unlikely [sic] be effectively preventative in

the future."  Thus, with respect to Bonin's potential for dangerousness, Dr. Blackburn

concluded that "with a reasonable degree of certainty that given the opportunity, Mr. Bonin will

pursue activities in one or more of his delusional areas.  If he perceives that a particular

individual is blocking or interfering with his 'potential to be successful' in his pursuits, that

individual may be exposed to harm from Mr. Bonin."  Accordingly, Dr. Blackburn

unequivocally found that "Mr. Bonin is dangerous ...."

In his October 10, 2006 Psychiatric Evaluation, Dr. Blackburn again concludes that

Bonin's "release at this time, or in the foreseeable future, may substantially create the risk of

25

bodily injury to another person or serious damage to the property of another." This opinion is based in large part on Bonin's "demonstrated ability to obtain specific information about the individuals toward whom he has anger and resentment",  Dr. Blackburn's belief that Bonin's situation is deteriorating, that he is becoming more desperate and frustrated while his threats are increasing in seriousness, that Bonin has limited coping skills and minimal ability to control his impulses, and that medications have essentially no effect on his condition.  That opinion was affirmed at the evidentiary hearing wherein Dr. Blackburn further explained that the group of persons and entities Bonin perceives as posing an obstacle to the accomplishment of his goals has expanded, and that Bonin now considers himself at risk of being killed by these persons and entities.  Thus, Bonin's potential for acting out physically to protect himself from this perceived harm has escalated dramatically.  Moreover, a significant aspect of this escalation is that since the death of his father,  Bonin now has no inhibitors remaining against his acting on his delusions and beliefs.

Given Dr. Blackburn's uncontroverted opinion as to Bonin's dangerousness resulting from his mental disease or defect, and Bonin's demonstrated ability and intent to act on his delusions, contacting Governor Blanco and a United States Marshall suggesting that he had bought plastic tie straps to make his citizen's arrest of Judge Methvin and other government officials, the undersigned concludes that Bonin's release would create a substantial risk of bodily injury to another person.

**Suitable Arrangements for State Custody and Care are not Available**

The record clearly reflects that there are no available suitable arrangements for state custody of Bonin.  Defense counsel has repeatedly attempted to locate a suitable state facility to house Bonin.  However, despite his diligent efforts,  no suitable state facility is available.

Based on the foregoing, and after careful review of the evidence presented at the competency hearing and the medical reports submitted, this court's entire files on Bonin, and the undersigned's personal observations of Bonin on three occasions, the undersigned finds that Bonin is not competent to stand trial or assist in his defense, and given Dr. Blackburn's uncontroverted prognosis for Bonin's condition under available treatment methods, it is not likely that Bonin will be restored to competency in the foreseeable future.   As required under 18 U.S.C. § 4246(a), the undersigned also finds by clear and convincing evidence that Bonin is presently suffering from a mental disease or defect, as a result of which his release would create a substantial risk of bodily injury to another person, and that suitable arrangements for state custody and care of Bonin are not available.  Accordingly, should be committed to the custody of the Attorney General for continued treatment of his mental illness pursuant to 18 U.S.C. § 4246(d).

The undersigned recognizes that the commitment of an individual to a mental hospital for an indefinite period of time is a significant deprivation of a person's liberty.  However, given the overwhelming weight of the evidence before this court demonstrating that Bonin suffers from a severe mental illness which poses a substantial danger to society, and Bonin's

failure to present evidence to the contrary,  the undersigned has no alternative but to recommend that Bonin be committed for continued psychiatric hospitalization and treatment.

**It is therefore recommended** that the district judge commit Bonin to the custody of the Attorney General for continued treatment of his mental illness pursuant to 18 U.S.C. § 4246(d) until the State of Louisiana will assume responsibility for Bonin's custody, care and treatment, or Bonin's mental condition is such that his release, or conditional release, would not create a substantial risk of bodily injury to another person, whichever is earlier.  **It is further recommended** that the district judge require the Attorney General to continue periodically to exert all reasonable efforts to cause the State of Louisiana to assume responsibility for Bonin's custody, care and treatment as required by 18 U.S.C. § 4246(d).

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  See**

28

*Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir.  1996).**

Signed at Lafayette, Louisiana May 30, 2007.

_C. Michael Hill_

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE